Dion W. Hayes (VSB No. 34304)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Proposed Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                  :        Chapter 11
                                        :
Greenbrier Hotel Corporation, et al.,   :        Case No. 09-_____ (___)
                                        :
            Debtors.                    :        (Joint Administration Pending)
- - - - - - - - - - - - - - - - - - - - - - - - - - x

**MOTION FOR ORDER: (A) AUTHORIZING CONTINUED USE OF THE DEBTORS'
CENTRALIZED CASH MANAGEMENT SYSTEM; (B) AUTHORIZING
MAINTENANCE AND CONTINUED USE OF THE DEBTORS' EXISTING BANK AND
INVESTMENT ACCOUNTS AND BUSINESS FORMS; (C) WAIVING CERTAIN
OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; (D) WAIVING THE
REQUIREMENTS OF SECTION 345 OF THE BANKRUPTCY CODE; AND (E)
GRANTING ADMINISTRATIVE EXPENSE STATUS TO INTER-DEBTOR CLAIMS**

The debtors and debtors in possession in the above-captioned cases (collectively, the

"**Debtors**"),[1] hereby move (the "**Motion**") for entry of an order substantially in the form attached

hereto, pursuant to sections 105(a), 345, 363, and 503 of Title 11 of the United States Code (the

"**Bankruptcy Code**"), (i) authorizing, but not directing the continued use of the Debtors'

---

[1]  The last four digits of the Debtors' taxpayer identification numbers are: (i) Greenbrier Hotel Corporation (2133);
(ii) The Greenbrier Resort and Club Management Company (8589); (iii) Greenbrier IA, Inc. (6471); (iv) The Old
White Development Company (3021); (v) Old White Club Corporation (0031); and (vi) Greenbrier Golf and Tennis
Club Corporation (0033). Each of the Debtors has a mailing address of 300 W. Main Street, White Sulphur Springs,
WV 24986-2075.

centralized cash management system and procedures; (ii) authorizing, but not directing, the

maintenance and continued use of the Debtors' existing bank accounts and business forms; (iii)

waiving certain operating guidelines relating to bank accounts; (iv) waiving the requirements of

section 345 of the Bankruptcy Code; and (v) granting administrative expense status to Inter-

Debtor Claims (as defined herein). In support of the Motion, the Debtors rely upon and

incorporate by reference the Affidavit of Michael McGovern, Chief Financial Officer of

Greenbrier Hotel Corporation, in Support of Chapter 11 Petitions and First Day Pleadings (the

"**McGovern Affidavit**"), filed with the Court concurrently herewith.  In further support of the

Motion, the Debtors respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 345,

363, and 503 of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

3.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in

this Court for relief under chapter 11 of the Bankruptcy Code.  The factual background regarding

the Debtors, including their business operations, their capital and debt structure, and the events

leading to the filing of these bankruptcy cases, is set forth in detail in the McGovern Affidavit,

filed concurrently herewith and fully incorporated herein by reference.[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the McGovern
Affidavit.

4.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.

5.     No trustee or examiner has been appointed in these chapter 11 cases, and no committees have yet been appointed or designated.

## RELIEF REQUESTED

6.     By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 345, and 363 of the Bankruptcy Code: (a) authorizing, but not directing, the continued use of the Debtors' centralized cash management system and procedures, (b) authorizing, but not directing, the maintenance and continued use of the Debtors' existing bank accounts and business forms; (c) waiving certain operating guidelines relating to bank accounts set forth in the U.S. Department of Justice, Office of the U.S. Trustee: Operating Guidelines for Chapter 11 Cases (the "**U.S. Trustee Guidelines**"), adopted by the Office of the United States Trustee for the Eastern District of Virginia (the "**U.S. Trustee**"); and (d) waiving the requirements of section 345 of the Bankruptcy Code. The relief requested herein will help ensure the Debtors' orderly entry into chapter 11 and will avoid many of the possible disruptions and distractions that could divert the Debtors' attention from more pressing matters during the initial days of this chapter 11 case.

## BASIS FOR RELIEF

**A.     The Debtors Should Be Permitted to Continue Using the Existing Cash Management System.**

7.     Greenbrier Hotel Corporation ("**GHC**") acts as a disbursement agent for its affiliated Debtors as part of a centralized cash management system (the "**Cash Management System**"). The Cash Management System is designed to accurately and efficiently collect, transfer and disburse funds generated by GHC and its affiliated Debtors and to record each such

deposit, transfer, and disbursement.[3] The Greenbrier maintains four (4) active bank accounts which comprise the Cash Management System (the "**GHC Bank Accounts**").

8.    A GHC Bank Account located at First Citizens Bank in White Sulphur Springs, West Virginia (the "**General Operating Account**") serves as the center for the Debtors' Cash Management System. The General Operating Account is funded daily by receipts from credit card payments and guest payments deposited directly into the General Operating Account, as well as by funds periodically swept into the General Operating Account from two other GHC Bank Accounts (the "**Additional Depository Accounts**"). The Additional Depository Accounts consist of: (i) an account at Bank One in Beckley, West Virginia funded by deposits from the Debtors' operations at "Tamarack"[4] and (ii) an account at Bank of Monroe in Union, West Virginia funded by deposits from a retail store operated by the Debtors in White Sulphur Springs, West Virginia that sells wine and spirits.

9.    The final GHC Bank Account comprising the Cash Management System is a disbursement account at First Citizens Bank relating to the Debtors' Copeland Hill rental program (the "**Copeland Hill Account**"). Prior to the Petition Date, the Debtors entered into certain lease agreements with certain homeowners of Copeland Hill—a residential development near The Greenbrier—whereby the Debtors can offer accommodations in the Copeland Hill cottages to guests of The Greenbrier. Revenues generated from this arrangement are deposited

---

[3] Prior to the Petition Date, the Debtors were also authorized to transfer into the General Operating Account funds available through an intercompany account maintained by the Debtors' ultimate parent company (the "**Cash Pool Account**"). The Cash Pool Account provided the Debtors with a source of additional working capital in the event cash generated by the Debtors' business was insufficient to satisfy the Debtors' expenses during any given period. After the Petition Date, the Debtors will no longer be authorized to obtain any additional funds from the Cash Pool Account, and any supplemental cash requirements of the Debtors will be satisfied by the Debtors' proposed debtor-in-possession financing to be provided by a non-debtor affiliate of the Debtors.

[4] The West Virginia Parkways Economic Development and Tourism Authority owns and operates a shopping, entertainment, and conference center near Beckley, West Virginia called "Tamarack." The Debtors operate a retail outlet and supervise the food service operations at Tamarack. The Debtors' Bank Account at Bank One in Beckley is used for cash deposits from the retail outlet and the food service management fees.

into the General Operating Account. The homeowners' *pro rata* share of such revenues is then transferred from the General Operating Account to the Copeland Hill Account prior to final disbursal to the homeowners.

10.     In addition to the GHC Bank Accounts, Old White Development Company ("**OWDC**")—another Debtor herein—maintains three money market accounts (the "**OWDC Accounts**," and together with the GHC Bank Accounts, the "**Bank Accounts**") at First Citizens Bank in White Sulphur Springs, West Virginia. The OWDC Accounts are not linked to the Debtors' Cash Management System. Rather, these accounts hold funds on behalf of certain homeowners' associations for future projects and expenditures for developments in close proximity to The Greenbrier.

11.     Attached hereto as Exhibit A is a list of the Bank Accounts.

12.     As part of the Debtors' Cash Management System, GHC also maintains an investment account for overnight investments (the "**Investment Account**"). On a nightly basis, the funds on-hand in the General Operating Account are swept into the Investment Account overnight, before being returned to the General Operating Account at the opening of each business day.

13.     Disbursements for the Debtors' general operating expenses, with the exception of payroll and certain payroll-related expenses,[5] are made from the General Operating Account.

---

[5] As described in detail in the Motion for Order Pursuant to Sections 105(a), 363, 507(a), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003: (I) Authorizing Debtors to Pay Certain Prepetition Wages, Compensation, and Employee Benefits; (II) Authorizing Debtors to Continue Certain Employee Benefits Programs in the Ordinary Course of Business; and (III) Directing Banks to Honor Prepetition Checks for Payment of Prepetition Wage, Salary, and Benefit Obligations (the "**Wage Motion**"), CSX Non-Rail Payroll Services, Inc. ("**CSX Payroll**") administers payroll and certain human resources services for the Debtors, including issuing paychecks and remitting employer withholdings, contributions, and payroll taxes to the appropriate parties on behalf of the Debtors. As set forth in the Wage Motion, after the Petition Date, the Debtors propose to fund payroll obligations to CSX Payroll through borrowings under the Debtors' proposed debtor-in-possession financing to be provided by the Debtors' ultimate parent. The Debtors propose a similar arrangement to satisfy inter-company obligations regarding insurance.

After the Petition Date, subject to approval by the Court, the proceeds from the Debtors'

proposed debtor-in-possession financing (the "**DIP Financing**") will be deposited into the

General Operating Account as the Debtors' financial conditions necessitate drawing on the DIP

Financing.

14.    By this Motion, the Debtors seek authority to continue using the Cash

Management System after the Petition Date in the ordinary course of the Debtors' business.

**B.    Cause Exists to Waive Certain of the U.S. Trustee Guidelines.**

15.    The U.S. Trustee Guidelines were adopted in order to assist the U.S. Trustee in

supervising the administration of chapter 11 cases.  The U.S. Trustee Guidelines require chapter

11 debtors to, among other things:

- close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;

- establish and maintain separate debtor-in-possession accounts for the payment of taxes and separate debtor-in-possession accounts for cash collateral; and

- obtain and utilize new checks for all debtor-in-possession accounts which bear the designation "Debtor in Possession" and contain certain other information related to the chapter 11 case.

16.    The U.S. Trustee Guidelines are designed to clearly distinguish between

prepetition and postpetition transactions and to prevent the inadvertent payment of prepetition

claims.  Notwithstanding these requirements, given the size and complexity of the Debtors'

operations, the continued use of the Bank Accounts is essential to a smooth and orderly transition

into chapter 11.  All parties in interest will be best served by the Debtors' continued use of the

Bank Accounts, as it will minimize the disruption of the Debtors' businesses.

17.    In addition, the Debtors hereby seek a waiver of the requirement to establish

specific bank accounts for tax payments.  The Debtors believe that (a) the Debtors' tax

obligations can be funded most efficiently out of the existing Bank Accounts, (b) the U.S.

Trustee can adequately monitor the flow of funds into, between, and out of such accounts, and

(c) the creation of new debtor-in-possession accounts designated solely for tax obligations would

be unnecessary and inefficient.

18.     Accordingly, subject to a prohibition against honoring prepetition checks without

specific authorization from this Court, the Debtors request that the Bank Accounts be deemed to

be debtor-in-possession accounts and that their continued use, in the same manner employed

immediately preceding the Petition Date, be authorized.

19.     The Debtors represent that if the relief requested in this Motion is granted, they

will not pay, and each of the banks at which the Bank Accounts are maintained will be directed

not to pay, any debts incurred before the Petition Date, other than as authorized by this Court.

**C.    Cause Exists to Waive the Section 345 Investment Requirements.**

20.     By this Motion, the Debtors seek entry of an order waiving the investment and

deposit requirements imposed by Bankruptcy Code section 345(b).  Bankruptcy Code section

345 authorizes deposits or investments of money of a bankruptcy estate, such as cash, in a

manner that will "yield the maximum reasonable net return on such money, taking into account

the safety of such deposit or investment." 11 U.S.C. § 345(a).

21.     For deposits or investments that are not "insured or guaranteed by the United

States or by a department, agency, or instrumentality of the United States or backed by the full

faith and credit of the United States," Bankruptcy Code section 345(b) provides that the estate

must require from the entity with which the money is deposited or invested a bond in favor of the

United States secured by the undertaking of an adequate corporate surety, "unless the court for

cause orders otherwise." Id.

7

22.    The Debtors believe that "cause" exists to waive the investment and deposit restrictions pursuant to Bankruptcy Code section 345(b).

23.    Courts have considered a number of factors in seeking to determine whether "cause" exists pursuant to Bankruptcy Code section 345(b). See In re Service Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (identifying various factors relevant to the existence of "cause," including the sophistication and size of the debtor's business, the amounts of the investments involved, bank ratings, the complexity of the case, the debtor's safeguards for the funds, the debtor's ability to reorganize in the face of failure of one or more of the financial institutions, the benefit to the debtor of a waiver of the section 345(b) requirements, the potential harm to the estate, and the reasonableness of such a waiver under the circumstances).

24.    Congress has emphasized that the investment and deposit requirements set forth in Bankruptcy Code section 345 may be "wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, [but such requirements] can work to needlessly handcuff larger, more sophisticated debtors." H.R. Rep. 103-834, 103d Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994). Thus, Congress added the waiver clause in section 345(b) "to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling In re Columbia Gas Sys., Inc., 33 F.3d 294, 1994 WL 463514 (3d Cir. Del. 1994)." Id.

25.    To the extent that any Bank Account is construed to have a balance substantial enough to fall within the ambit of the Bankruptcy Code section 345 protections, the Debtors believe that the safety presented by the financially stable, and government insured banking institutions with whom the Debtors bank constitutes sufficient cause pursuant to Bankruptcy Code section 345(b) to allow the Debtors to deviate from approved investment and deposit

8

practices established by the Bankruptcy Code. Likewise, the Investment Account utilized by the Debtors in the ordinary course of managing their Cash Management System provides benefits to the Debtors. Accordingly, the Debtors respectfully request authority to maintain their Bank Accounts and Investment Account in a safe and prudent manner in accordance with their existing banking practices.

**D.    Continuation of the Cash Management System Is in the Best Interests of the Debtor, Its Creditors, and All Other Parties in Interest.**

26.    The Debtors' cash management procedures constitute ordinary course, essential business practices for the Debtors. The Debtors' current Bank Accounts provide significant benefits to the Debtors including, *inter alia*, the ability to (i) ensure the maximum availability of funds when necessary, and (ii) reduce administrative expenses by facilitating the movement of funds and the development of timely and accurate account balance information. The Debtors submit that any serious disruption to their Cash Management System and existing Bank Accounts could have a severe and adverse impact upon their efforts to maximize value.

27.    Moreover, the Debtors intend to take reasonable steps to ensure that maintaining the present system, subject to any modifications discussed above, will not result in any prejudice to any party in interest. In particular, the Debtors will continue to maintain records with respect to all transfers of cash among any of their affiliates so that all intercompany transactions involving the Debtors may be readily ascertained, traceable, and recorded properly on applicable intercompany accounts. The Debtors will also separately record, as of the Petition Date, the consolidated balances of each of its Bank Accounts so as to distinguish postpetition transfers and ensure that such transactions are adequately and promptly documented in its books and records.

28.    A debtor's request to maintain its existing Cash Management System has been held to be entirely consistent with section 363(c)(1) of the Bankruptcy Code, "which allows a

debtor in possession to use property of the estate in the ordinary course of business." See

Charter Co. v. Prudential Ins. Co. of America (In re Charter Co.), 778 F.2d 617, 621 (11th Cir.

1985). Additionally, the Court has granted substantially similar relief in other chapter 11 cases

in this District. See, e.g., In re S & K Famous Brands, Inc., Case No. 09-30805 (KRH) (Bankr.

E.D. Va. Feb. 10, 2009); In re Chesapeake Corporation, Case No. 08-36642 (DOT) (Bankr. E.D.

Va. Dec. 30, 2008); In re LandAmerica Financial Group, Inc., Case No. 08-35994 (KRH)

(Bankr. E.D. Va. Nov. 26, 2008); In re Circuit City Stores, Inc., Case No. 08-35653 (KRH)

(Bankr. E.D. Va. Nov. 10, 2008); In re Movie Gallery, Inc., Case No. 07-33849 (DOT) (Bankr.

E.D. Va. Oct. 17, 2007). The Debtors respectfully submit that such relief should be granted here.

**E.    The Debtors Should Be Authorized to Continue Using Their Existing Business
Forms.**

29.    In an effort to minimize administrative expense and delay, the Debtors request

authority to continue to use their correspondence, business forms, including, but not limited to,

letterhead, purchase orders, and invoices, and checks (collectively, the "**Business Forms**"), in

the forms existing immediately prior to the Petition Date, without reference to their status as

debtors in possession.

30.    In addition to press releases, each of the Debtors' vendors will receive direct

notice of these bankruptcy filings. Furthermore, changing the Business Forms would be

expensive and burdensome to the Debtors' business operations while conferring no benefit to

those dealing with the Debtors. For these reasons, the Debtors seek authorization to use existing

Business Forms without being required to place the label "Debtor in Possession" on each.

**F.    The Court Should Grant Administrative Expense Status to Inter-Debtor Claims.**

31.    To ensure that each individual Debtor will not fund the operations of another

entity at the expense of such Debtor's creditors, the Debtors request that all claims arising from

inter-Debtor transactions (the "**Inter-Debtor Claims**") against a Debtor by another Debtor after

the Petition Date be accorded administrative expense status pursuant to section 503(b) of the

Bankruptcy Code.  Such status will ensure that each individual on whose behalf another Debtor

has utilized funds or incurred expenses will continue to bear ultimate repayment responsibility,

thereby protecting the interests of each Debtor's creditors.

32.    Such Inter-Debtor Claims represent actual and necessary costs of preserving the

Debtors' estates.  Accordingly, the Court should affirm that the Inter-Debtor Claims shall have

administrative expense status pursuant to section 503(b) of the Bankruptcy Code.

33.    This Court and other courts have granted the same or similar relief in other

chapter 11 cases.  See, e.g., In re Circuit City Stores, Inc., et al., Case No. 08-35653 (KRH)

(Bankr. E.D. Va. Nov. 10, 2008); and In re Movie Gallery, Inc., Case No. 07-33849 (DOT)

(Bankr. E.D. Va. Oct. 18, 2007).

**G.     The Debtors Will Incur Immediate and Irreparable Harm if Not Permitted to
Continue to Use Their Cash Management System.**

34.    The relief requested is also warranted under Bankruptcy Rule 6003, which

provides:

> Except to the extent that relief is necessary to avoid immediate and
> irreparable harm, the court shall not, within 20 days after the filing of the
> petition, grant relief regarding the following: . . . (b) a motion to use, sell,
> lease, or otherwise incur an obligation regarding property of the estate,
> including a motion to pay all or part of a claim that arose before the filing
> of the petition, but not a motion under Rule 4001.

Fed. R. Bankr. P. 6003.

35.    No court within the Fourth Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision.[6] However, the Fourth Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. See, e.g., Hughes Network Systems, Inc. v. Interdigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. See, e.g., Scotts Co. v. United Industries Corp., 315 F.3d 264, 283 (4th Cir. 2002) (citing Direx Israel, Ltd. v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991)).

36.    To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Fourth Circuit Court of Appeals.

37.    Accordingly, the Court should allow for the continued use of the Debtors' Cash Management System and maintenance of their existing Bank Accounts and Investment Account.

**H.    The Debtors Request Entry of an Immediate Order Granting the Relief Sought Herein on an Interim Basis, and that Such Order Become Final if No Party Objects Timely.**

38.    To minimize disruptions associated with the commencement of these cases, the Debtors request that the Court immediately grant the relief sought herein on an interim basis (the "**Interim Order**").

---

[6] Although there is not direct authority concerning Bankruptcy Rule 6003 in the Fourth Circuit, at least one bankruptcy court, applying Bankruptcy Rule 6003, concluded that first-day relief in a similar context was warranted because such relief was necessary to avoid irreparable harm. See In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).

39.     However, if any party in interest files a written objection to any of the relief

sought in this Motion within fifteen (15) days of the date of entry of an Interim Order granting

such relief, and serves such objection on proposed counsel to the Debtors, counsel to CSX

Corporation, the U.S. Trustee and the 20 largest unsecured creditors of the Debtors, the Debtors

respectfully request that such objection be adjudicated by the Bankruptcy Court during the first

omnibus hearing before the Bankruptcy Court or such other date as the Bankruptcy Court

schedules. Pending such adjudication, the Debtors request that the Interim Order remain

effective. If no objections are timely received, the Debtors request that the Interim Order be

deemed a final and non-appealable order without need for a further hearing.

### NOTICE

40.     Notice of this Motion will be given to: (i) the office of the United States Trustee

for the Eastern District of Virginia; (ii) counsel to CSX Corporation; (iii) the United States

Attorney for the Eastern District of Virginia; (iv) the Internal Revenue Service; (v) the Debtors'

top twenty (20) largest unsecured creditors on a consolidated basis; and (vi) the banks listed on

Exhibit A annexed hereto. The Debtors submit that, under the circumstances, no other or further

notice of the Motion is required.

### NO PRIOR REQUEST

41.     No previous motion for the relief sought herein has been made to this or any other

court.

### WAIVER OF MEMORANDUM OF LAW

42.     Pursuant to Local Rule 9013-1(G), and because there are no novel issues of law

presented in the Motion and all applicable authority is set forth in the Motion, the Debtor

requests that the requirement that all motions be accompanied by a separate written

memorandum of law be waived.

13

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order,

substantially in the form annexed hereto as <u>Exhibit B</u>, granting the Motion and such other and

further relief as may be just and proper.

Dated: March 19, 2009
      Richmond, Virginia

Respectfully submitted,


/s/ Dion W. Hayes
Dion W. Hayes (VSB No. 34304)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Proposed Attorneys for Debtors and
Debtors in Possession

## EXHIBIT A

(Bank Accounts)

# EXHIBIT A

| Debtor Entity | Account Description | Bank | Location |
|---|---|---|---|
| Greenbrier Hotel Corporation | Operating | First Citizens Bank | White Sulphur Springs, WV |
| Greenbrier Hotel Corporation | Tamarack Depository | Bank One | Beckley, WV |
| Greenbrier Hotel Corporation | Union Liquor Depository | The Bank of Monroe | Union, WV |
| Greenbrier Hotel Corporation | Copeland Hill Trust Disbursement | First Citizens Bank | White Sulphur Springs, WV |
| The Old White Development Co. | Money Market – Common Area Reserve | First Citizens Bank | White Sulphur Springs, WV |
| The Old White Development Co. | Money Market – Building Reserve | First Citizens Bank | White Sulphur Springs, WV |
| The Old White Development Co. | Money Market – Neighborhood Area Reserve | First Citizens Bank | White Sulphur Springs, WV |

## **EXHIBIT B**

(Proposed Order)

Dion W. Hayes (VSB No. 34304)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Proposed Attorneys for the Debtors and
Debtors in Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:                                   :    Chapter 11
                                         :
Greenbrier Hotel Corporation, et al.,    :    Case No. 09-_____ (___)
                                         :
                         Debtors.        :    (Joint Administration Pending)
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER: (A) AUTHORIZING CONTINUED USE OF THE DEBTORS' CENTRALIZED CASH MANAGEMENT SYSTEM; (B) AUTHORIZING MAINTENANCE AND CONTINUED USE OF THE DEBTORS' EXISTING BANK AND INVESTMENT ACCOUNTS AND BUSINESS FORMS; (C) WAIVING CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; (D) WAIVING THE REQUIREMENTS OF SECTION 345 OF THE BANKRUPTCY CODE AND (E) GRANTING ADMINISTRATIVE EXPENSE STATUS TO INTER-DEBTOR CLAIMS**

Upon the motion (the "**Motion**")[1] of the debtors and debtors in possession in the

above-captioned case (collectively, the "**Debtors**"), for entry of an order, pursuant to sections

105(a), 345, 363 and 503 of Title 11 of the United States Code (the "**Bankruptcy Code**"), (i)

authorizing, but not directing the continued use of the Debtors' centralized cash management

system and procedures; (ii) authorizing, but not directing, the maintenance and continued use of

the Debtors' existing bank and investment accounts and business forms; (iii) waiving certain

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

operating guidelines relating to bank accounts; (iv) waiving the requirements of section 345 of

the Bankruptcy Code; and (v) granting administrative expense status to Inter-Debtor Claims; and

upon the McGovern Affidavit; and it appearing that no other or further notice is required; and

after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED, that**:

1.    The Motion is **GRANTED**.

2.    Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are

authorized, but not directed, to continue the management of their cash as conducted immediately

prior to the commencement of these cases, including us of the Investment Accounts and the Bank

Accounts.

3.    The requirement of the U.S. Trustee Guidelines that the Debtors close all existing

bank accounts and open new postpetition disbursement accounts is hereby waived.

4.    The requirement of the U.S. Trustee Guidelines that the Debtors establish specific

bank accounts for tax payments is hereby waived.

5.    The Debtors shall record the consolidated balances of each of the Bank Accounts

listed on Exhibit A to the Motion as of the Petition Date so as to distinguish postpetition transfers

and ensure that such transactions are adequately and promptly documented in its books and

records.

6.    Except as otherwise expressly provided in this Order, all banks at which the Bank

Accounts are maintained are authorized and directed to continue to service and administer the

Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in

the ordinary course, and to receive, process, honor, and pay any and all checks, drafts, and wires

issued and drawn on the Bank Accounts after the Petition Date.

2

7.     All banks providing and maintaining the Bank Accounts shall be and hereby are prohibited from offsetting, freezing, affecting or otherwise impeding the use or transfer of, or access to, any funds of the Debtors deposited in the Bank Accounts before or after the Petition Date on account, or by reason, of any claim (as defined in Section 101(5) of the Bankruptcy Code) of any such bank against any of the Debtors that arose before or by reason of the commencement of these cases.

8.     Except as otherwise provided in this Order or in a separate order of this Court, all banks provided with notice of this Order maintaining any of the Bank Accounts shall not honor or pay any bank payments drawn on the Bank Accounts or otherwise issued prior to the Petition Date.

9.     The Debtors are authorized to continue to engage in intercompany transactions necessary to execute the Cash Management System and manage the day-to-day operations of their businesses, and the Debtors shall continue to maintain records with respect to all transfers of cash (including pursuant to such transactions) so that all intercompany transactions may be readily ascertained, traced, and recorded properly on applicable intercompany accounts. Inter-Debtor Claims arising from such intercompany transactions shall be afforded administrative expense status pursuant to section 503(b) of the Bankruptcy Code.

10.     The Debtors are authorized to open any new bank accounts or close any of the existing Bank Accounts as it may deem necessary and appropriate in its sole discretion. Any and all accounts opened by the Debtors on or after the Petition Date at any bank shall, for all purposes under this Order, be deemed a Bank Account (as if it had been opened prior to the Petition Date), and any and all banks at which such accounts are opened shall similarly be subject to the rights and obligations of this Order.

3

11.    The Debtors are authorized, but not directed, to use their Business Forms, substantially in the forms existing immediately prior to the Petition Date, without reference to their status as debtors in possession.

12.    If any party in interest files a written objection to any of the relief sought in the Motion within fifteen (15) days of the date of entry of this Order, and serves such objection on proposed counsel to the Debtors, the U.S. Trustee, and the 20 largest unsecured creditors of the Debtors, such objection shall be adjudicated by the Court during the first omnibus hearing (or at such other date as the Court may schedule).  Pending such adjudication, the terms of this Order shall remain effective.  If no objections are timely received, this Order shall be deemed a final and non-appealable order without need for further hearing.

13.    The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the contents of the Motion.

14.    This order shall be without prejudice to the rights of the Debtors or any party in interest, including without limitation, the U.S. Trustee and the institutions where the Bank Accounts are maintained, to apply to the Court for authority to modify the terms hereof on appropriate notice and motion.

15.    As soon as practicable after entry of this Order, the Debtors shall serve a copy of this Order on those banks at which the Bank Accounts are maintained.

16.    Notwithstanding any provision of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

17.    The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is hereby waived.

4

18.   This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated:   Richmond, Virginia
         March __, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ Dion W. Hayes
Dion W. Hayes (VSB No. 34304)
Patrick L. Hayden (VSB No. 30351)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

Proposed Attorneys for the Debtors and
Debtors in Possession

## CERTIFICATION OF ENDORSEMENT UNDER LOCAL RULE 9022-1(C)

I hereby certify that the foregoing proposed order has been endorsed by all necessary parties.

/s/ Dion W. Hayes
Dion W. Hayes (VSB No. 34304)
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
(804) 775-1000

\6902022